147 So. 407

**CLAY COUNTY ABSTRACT CO. v. McKAY.**

7 Div. 113.

Supreme Court of Alabama.

March 30, 1933.

395

Pruet & Glass, of Ashland, for appellant.

A. L. Crumpton, of Ashland, for appellee.

BROWN, Justice.

Action by the appellant against the appellee resulting in a verdict and judgment for the defendant.

The case was submitted to the jury on counts 1, 2, 3, and 4 of the complaint, and the plea of the general issue.

The first count is in trespass for the wrongful taking of personal property described as follows: "A copy or the copying of the abstract books *or and* records, and or papers of" the plaintiff. (Italics supplied.)

Counts 2, 3, and 4 are counts in trover, substantially in the form prescribed by the statute (Code 1923, § 9531, form 26).

The second count describes the property as "A portion of the abstract books *or and* records *or and* papers of the Clay County Abstract Company," etc. (Italics supplied.)

Count 3 describes the property converted as "A copy of the abstract books *or and* records *or and* papers of the Clay County Abstract Company," etc. (Italics supplied.)

The description of the property in count 4 is as follows: "A portion of the abstract books *or and* records *or and* papers * * * the property of the plaintiff." (Italics supplied.)

The court sustained the defendant's demurrers to counts 5 and 6, and this ruling is made the predicate for assignments of error 3 and 3½.

By count 5, plaintiff claims of the defendant $4,000 as damages, for that "during the year 1927, and for some time prior thereto, the plaintiff and the defendant had an oral agreement whereby the plaintiff was to furnish *its books* to the defendant, and the defendant to retain possession of same for the purpose of making abstracts of the land titles described and set out therein, the proceeds derived from said abstracts so made by the defendant to be equally divided between the plaintiff and the defendant, and plaintiff further avers that while the defendant had in his possession the books of the plaintiff, he converted to his own use, or the use of another, said books *and or* records or a copy thereof, during the year 1927, the property of the plaintiff." (Italics supplied.)

The averments of count 6 are substantially the same as count 5, and the property alleged to have been converted is described as "a portion of said books *and or* records *or a copy thereof.*" (Italics supplied.)

The description of the property is too indefinite and uncertain to withstand appropriate demurrer. It is doubtful whether the interloper "and/or" has any appropriate place in the English language, but it is certain that it has no place in pleading, where the law requires that the pleader must state his cause of action or ground of defense with certainty to a common intent. Cronin v. Crooks, 143 N. Y. 352, 38 N. E. 268; Schwartz Motor Co. et al. v. Bradley Real Estate & Ins. Co., 220 Ala. 295, 125 So. 26; Walker v. Dorsett, 221 Ala. 623, 130 So. 380; American Bar Association Journal, September 1932; Ib. January 1933, page 55.

The evidence shows that plaintiff owned a set of abstract books, consisting of loose leaves bound in two volumes, containing a concrete index to all land conveyances in Clay county, which it used in its business of making abstracts of titles for hire; that when an abstract was made it kept a copy thereof for future reference, and that it had a number of such copies; that it also owned a great number of blank leaves for use in keeping said books up to date, and other stationery suitable for the making of abstracts; that in October, 1925, the plaintiff, acting through its president, E. P. Gay, entered into a contract with the defendant and turned over to him all of said property to be used by the defendant in the making of abstracts of title, the fees charged and received therefor to be equally divided between the parties; this arrangement to be terminated at the will of either of the parties.

At about the time the above-stated agreement was made, Gay sold to the defendant his law library and "all other books, papers, furniture, fixtures and office equipment now (then) owned by E. P. Gay."

The arrangement between plaintiff and defendant continued until 1927, when by mutual agreement of the parties it was terminated, and defendant turned back to the plaintiff said abstract books, but, according to the plaintiff's evidence, did not return the copies of abstracts, blank loose leaves, and blanks for making abstracts, though demand therefor was made on him before this suit was filed.

Plaintiff offered evidence tending to support an inference that defendant had used said loose leaves in making a copy of said abstract books, which the defendant kept for his own use. Fifteen of said sheets were found stored away in defendant's office under a lot of other stuff; said sheets being placed at the bottom of the cabinet and the other stuff piled on top. These were taken in charge by the witness McCain, and were in plaintiff's possession when the action was instituted. The plaintiff offered evidence going to show the value of the blanks, and the value of the copies of abstracts.

The defendant's evidence tended to show that he purchased all the stationery in the office where the library was situated when he purchased the library, and that he furnished his own abstract blanks; that the copies of abstracts referred to were allowed to remain in the office which he occupied, after Gay quit the practice of law and moved to Florida; that they were scattered over the office in different places, some being left in the coal bin or box and that he regarded them as worthless; that when Gay returned and moved back into the office he told defendant all he wanted was the books; that he didn't want the copies of abstracts; that thereafter in cleaning out the office these copies were burned. At this point the evidence is in conflict.

Defendant denied making copies of the books, or any part thereof, but when confronted with the fifteen sheet record by Miss McCain, he admitted that he made these copies for temporary use in making abstracts and used them in lieu of the books, as they were more convenient to handle.

On the cross-examination of plaintiff's witness Gay, he testified: "I expect this is the first time he has ever known (of) us finding that copy of the record. Yes, I kept quiet from 1927 on down until 1931 about it. It is not a fact that Mr. McKay recently brought suit and foreclosed a mortgage on me and I brought this suit against him in spite. The state of my feelings toward Mr. McKay is not good. Mr. McKay has not foreclosed a mortgage against me. * * * I own sixteen shares of the Clay County Abstract Company."

The court here, over the plaintiff's objection, allowed the defendant, on further cross-

examination of Gay, to show that he was the president and a stockholder in the Clay County Trading Company; that witness had full charge of the trading company's affairs; and that about the time the defendant posted notice of the foreclosure of a mortgage on the lands of the Clay County Trading Company, this suit was filed by the witness.

While it must be conceded that the testimony last above stated was intrinsically irrelevant and immaterial to the issues in this case, nevertheless the questions were permissible for the purpose of testing the bias, credibility, and accuracy of the witness' testimony, and the objections thereto were addressed to the sound discretion of the trial court. Birmingham Ry., L. & P. Co. v. Lipscomb, 198 Ala. 653, 73 So. 962; Cox v. State, 162 Ala. 66, 50 So. 398.

The appellant's next contention is that the court erred in refusing the affirmative charge requested by it.

█ The evidence is without dispute that the abstract books were returned to the plaintiff soon after Judge Gay's return to Alabama from Florida, and it is certain that there was nothing in the evidence to show a conversion of these books, unless it can be said that making a copy of the books by the defendant was a conversion of the books themselves. There was no positive evidence that defendant made such copy. Plaintiff's evidence, however, shows that a sufficient number of blank sheets were delivered to the defendant to make such copy; that these sheets were to be used in keeping the abstract books posted up as new conveyances were made and recorded, and that none of these sheets were returned by the defendant, though demand was made on him therefor, and the only sheets received were the fifteen sheets recovered by Miss McCain.

The defendant denied making such copy, and denied that such blanks came into his possession, so the question was for the jury, and, at that, only as to the blank sheets.

█ The copying of the books was not a conversion of the books themselves, but, at most, an invasion of the plaintiff's common-law copyrights, which "is an intangible incorporeal right, and exists separate and apart from the property in the paper on which it it written or the physical substance in which it is embodied." 13 C. J. page 948, § 5; Caliga v. Inter-Ocean Newspaper Co., 157 F. 186, 84 C. C. A. 634; Id., 215 U. S. 182, 30 S. Ct. 38, 54 L. Ed. 150.

The principle is clearly stated by the court in Werckmeister v. American Lithographic Co. (C. C.) 142 F. 827, 830, thus: "The author of a painting, when it is finished, before publication, owns a material piece of personal property, consisting of the canvas and the paint upon it. He also owns an incorporeal right connected with it; that is, the right to make a copy of it. These two kinds of property, although growing out of the same intellectual production, are in their nature essentially and inherently distinct. The law has always recognized that they are distinct. The defendants' counsel admitted on the argument that, after a copyright has been once taken out, the two kinds of property are distinct, and that the owner of a painting may then sell the painting to one person, and the copyright to another. The claim is that that cannot be done before the statutory copyright is taken out. But the law has always recognized that a common-law copyright, before a general publication, is a distinct property from the thing to which the copyright applies. One man may be the owner of the thing, and another of the copyright in the thing. For instance, a person who has received a letter, voluntarily sent him by the writer, owns the piece of paper upon which the letter is written; but the writer of the letter continues to be the owner of the copyright, and can, by injunction, prevent the person who has received the letter from publishing it."

This principle has been applied to a set of abstract books such as involved in this case. Banker v. Caldwell, 3 Minn. 94 (Gil. 46).

Therefore, conceding that the evidence was sufficient to authorize an inference that the defendant made a copy of the abstract books without the plaintiff's consent, it was, at most, a violation of plaintiff's intangible incorporeal right, not a conversion of the books; and this would not support the action of trover, though an action on the case would lie. Hussey, Administrator, v. Peebles, 53 Ala. 432; Kelly v. McCaw, 29 Ala. 227; 1 C. J. p. 987, § 97.

█ Where the property, the subject-matter of the action of trover, has come into the possession of the defendant by the consent of the plaintiff, and the plaintiff relies on a wrongful detention of the property by defendant to sustain his action, the authorities are agreed that plaintiff has the burden of showing a demand by the plaintiff and a refusal of the defendant to deliver the possession. Strauss & Sons v. Schwab et al., 104 Ala. 669, 16 So. 692.

However, if the plaintiff can show "an illegal user or misuser," a demand and refusal is not essential to the right of recovery. Strauss & Sons v. Schwab et al., supra; Shriner v. Meyer, 171 Ala. 112, 55 So. 156, Ann. Cas. 1913A, 1103; 26 R. C. L. page 1122, § 33.

There was evidence tending to show that a number of copies of abstracts of land titles, and blank loose leaves for keeping the abstract books posted so as to show all conveyances subsequently recorded, were delivered to the defendant, along with the abstract books; that by mutual consent of the parties, the agreement between the parties—the

agreement under which defendant received all of said property—had been terminated. There was also evidence tending to show that said blank loose leaves had been used by defendant for purposes other than keeping up the abstract books, and that the copies of the abstracts had been destroyed before this suit was brought.

The defendant's evidence tended to show no such use of the said loose leaves, and that the copies of abstracts were destroyed with the plaintiff's consent and approval, or that it had abandoned the title to said copies of abstracts.

In the light of this evidence, and its conflicting tendencies, the question whether or not there was an illegal user or misuser of the blank loose leaves and said copies of abstracts, and therefore a conversion of same, was for the jury, and charges 4, 7, and 8, given by the court at defendant's instance, invaded the province of the jury. The giving of these charges must work a reversal of the judgment.

Charge 11, given for defendant, is affected with misleading tendencies, but the court did not commit reversible error in giving it.

There was also evidence tending to show that plaintiff had abandoned its property and title in the copies of the abstracts of titles, and, if this was found to be so, it could not recover for this species of property, although the defendant or his servant or agent destroyed said abstracts after such abandonment. 1 R. C. L. pages 1–8.

Nor could the plaintiff recover for the stationery, if the jury found that it was used in making abstracts as contemplated by the contract between the parties or belonged to Judge Gay, and not to the plaintiff, whether it was included in the sale made by Gay to the defendant or not.

For the errors committed in giving charges 4, 7, and 8, at defendant's request, the judgment must be reversed and the cause remanded. It is so ordered.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.