282 So.2d 892

**Charles A. BOSWELL, as Commissioner of Revenue, etc.**

v.

**PARAMOUNT TELEVISION SALES, INC., etc.**

SC 442.

Supreme Court of Alabama.

Aug. 30, 1973.

Rehearing Denied Sept. 27, 1973.

Robert J. Russell, of Ball, Ball, Matthews & Lamar, Montgomery, for appellees.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and B. Frank Loeb, Asst. Counsel, Dept. of Revenue and Asst. Attys. Gen., for appellants.

**492**

MADDOX, Justice.

Paramount Television Sales, a California corporation, filed a class suit for declaratory judgment in the Circuit Court of Montgomery County, in Equity, seeking to prevent the State Commissioner of Revenue from enforcing that portion of Act No. 96, Acts of Alabama, Special Session, 1971, p. 166, carried in the Code of Alabama, Recomp.1958, (1971 Supp.) as Title 51, § 629(21–28), which levies a privilege or license tax on persons engaging in the business of renting or leasing tangible personal property.[1]

The lower court entered a final decree holding Paramount and others in its class

not subject to the tax imposed under Act No. 96. The State prosecuted an appeal to the Court of Civil Appeals. That court was without jurisdiction and transferred the appeal to this Court.

Paramount is not qualified with the Secretary of State to do business in Alabama, has no office, place of business or regular representative living in Alabama. Paramount negotiates with television stations in Alabama by mail or wire at its office in California or other places outside Alabama to send films or tapes to the Alabama stations for telecasts or broadcasts. As a result of these negotiations, a written contract is sent to the Alabama broadcasting station for signature and then returned to California or other place outside Alabama for final approval and signature by agents for Paramount. The contracts give permission to display, broadcast or telecast the copyrighted material for a specified time and for an agreed price. These license or lease contracts provide that such tapes or films containing the copyrighted material are then shipped to the local station by mail or common carrier from California or other place outside Alabama and are required to be returned to Paramount within forty-eight hours after the scheduled broadcast date.

The facts are not seriously disputed. Many facts were stipulated. The basic dispute between the taxpayer and the State revolves around one legal question—Was Paramount engaged in the business of renting or leasing tangible personal property in Alabama?

The trial court decided the question in favor of Paramount, apparently on two

---

1. Act No. 96 reads in part as follows:
"Section 2. Levy of Tax. In addition to all other taxes now imposed by law, there is hereby levied and shall be collected as herein provided a privilege or license tax on each person engaging or continuing within this state in the business of leasing or renting tangible personal property at the rate of 4% of the gross proceeds derived by the lessor from the lease or rental of tangible personal property. . . ."

"Section 3. Exemptions. There are exempted from the computation of the amount of the tax levied, assessed or payable under this Act the following:
"(a) The gross proceeds accruing from the leasing or rental of a film or films to a lessee who charges, or proposes to charge, admission for viewing the said film or films. . . ."

grounds, (1) Paramount was not doing business in Alabama within the meaning of the tax statute and (2) the films or tapes were not "tangible personal property." Did the trial court decide these issues correctly? We think not.

First, were the films "tangible personal property?" Paramount contends the essence of the transaction is an intangible right to publish and that the transfer of this right to publish or broadcast even though accompanied by delivery of tangible personal property—the films, including reels and containers—is not a rental of "tangible personal property." Paramount says that in the absence of a license to publish or broadcast the film, the lease only gives the television stations the right to use the film. We do not accept this argument.

Paramount contracted that the film was to be used in the manner in which it was intended, for broadcast or telecast.

An agreement similar to the one involved in this case was considered in Florida Association of Broadcasters v. Kirk, Fla.App., 264 So.2d 437, cert. denied, Fla., 268 So.2d 534 (1972), a proceeding for declaratory judgment concerning liability for sales and use taxes. The District Court of Appeals of Florida affirmed the lower court's judgment that taxpayers were liable. The taxpayer contended that it was not subject to the tax because the use of the films was not a sale or rental of tangible personal property. The taxpayer attempted to distinguish between money paid for the actual physical film and that paid for the right to use the film. The court rejected this argument and noted:

"Every purchase or rental of property is the acquisition of the right to use that property for its intended purposes. Likewise, practically every piece of property subject to rent or sale is a product of someone's original idea and the rental thereof is for the purpose of using it." 264 So.2d at 438.

The license to publish without the physical transfer of films would be valueless.

See United Artists Corp v. Taylor, 273 N.Y. 334, 7 N.E.2d 254 (1937).

In a case where operators of motion picture theatres were held liable for sales tax on rented film from producers, the Supreme Court of Tennessee said:

"There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance. . . . If these elements should be separated from the finished product and the sales tax applied only to the cost of the raw material, the sales tax would, for all practical purposes, be entirely destroyed." Crescent Amusement Co. v. Carson, 187 Tenn. 112, 213 S.W.2d 27, 29 (1948).

In American Television Co. v. Hervey, Ark., 490 S.W.2d 796 (1973), the court held that a levy of a use tax on video tape material used by television stations pursuant to license agreements is a tax on tangible personal property.

"We agree with the state that the right to use property cannot be separated from the property itself and the 'right' spoken of by appellant would have no value except for the use of the tape or film—the two cannot be separated." 490 S.W.2d at 799.

Appellee cites a number of cases dealing with classification of a copyright and concludes that "the thing which is being assigned is a copyright which in itself is intangible." We disagree.

■ It is true a copyright may be an incorporeal right to publish and exists detached from the corporeal property out of which it arises. See Vol. 18, Am.Jur.2d Copyright and Literary Property, § 18, p. 318; Vol. 18 C.J.S. Copyright and Literary Property § 19, p. 162; Local Trademarks, Inc. v. Price, 170 F.2d 715 (5th Cir. 1948); Clay County Abstract Co. v. McKay, 226 Ala. 394, 147 So. 407 (1933). However, a copyright only represents the materials composing it. It is the films or finished

product which are leased here, not the copyright itself.

■ We conclude that the leased films are "tangible personal property" within the meaning of Section 1(h), Act No. 96, carried as § 629 (21)(h) of Title 51, Code of Alabama, Recomp. 1958, (1971 Supp.).

We come now to what we consider to be the decisive question. Was Paramount engaged in the business of leasing or renting tangible personal property in Alabama? We think so.

■ An article which has been transported in interstate commerce having arrived at its destination and there held for use or disposal becomes subject to the state's taxing and police power. Alexander Film Co. v. State, 253 Ala. 439, 44 So.2d 581 (1950), and cases there cited.

In *Alexander Film*, the question was whether the film company was liable for a state license tax. The facts, in almost every particular, were similar to the facts here. There, Alexander Film had a representative who contacted various places of business in Alabama and other states and suggested the making of a film to advertise the business of the particular customer. If an agreement was reached, the business customer agreed to pay for the rental of the film and the display space on the screen of the theatre in his local community. The contract was sent to the home office in Colorado and had to be accepted by the home office before becoming a binding contract. The film company then made arrangements with the local theatre for displaying the film advertisements. After display, the film was returned to the film company in Colorado. The representative of the film company who contacted the customers and theatres had no authority, and it was not his duty to collect delinquent installments. This Court held:

"The question of appellant's liability for the license tax here involved is dependent upon whether or not appellant is transacting the business of displaying advertisements in public places in this State within the meaning of section 456, supra. In order for appellant to be so engaged, it is necessary that it be present in Alabama by some authorized instrumentality acting for it. If appellant carries on no business within the State by a duly authorized instrumentality, it is not subject to a license tax under section 456, supra. James v. United Artists Corp., 305 U.S. 410, 59 S.Ct. 272, 83 L.Ed. 256." 253 Ala. at 442, 44 So.2d at 583.

Paramount lays much stress on the statement in *Alexander Film*, supra, that if a company carries on no business within the state by a duly authorized *instrumentality*, it is not subject to a license tax. Paramount claims that it fits this category—that none of its activities is performed except in the channels of interstate commerce.

The State contends that Act No. 96 levies a tax upon a local act—"the transfer of possession of the film by Appellee to the local station and its use in Alabama and in the hands of the local station"—which is sufficiently severable from the overall interstate nature of the transaction that the taxation of that particular act does not impede or unduly burden interstate commerce. In short, the State says the film—tangible personal property—comes to rest in Alabama, is rented here, and then returned.

Except for the fact that Paramount had no travelling representative physically present in Alabama to solicit orders, the facts are substantially identical to those of the *Alexander Film* case. There, this Court found Alexander Film was doing business in Alabama and was subject to the license tax. Does the fact that Alexander Film used a representative to solicit business and Paramount used the mails, telephones and telegraphs to solicit make a difference? We think not. In *Alexander Film*, the Court held:

"It is not the activity of the representative of the appellant in this State in securing the contract of shipment in interstate commerce which is sought to be

taxed by section 456, supra. It is the service performed in this State of screening the films for advertising purposes, which is done wholly in this State, that is made the basis of the tax. So that the question is not controlled by any principle of interstate commerce. *The taxable event occurred after the completion of interstate commerce.*" (Emphasis added.) 253 Ala. at 443, 44 So.2d at 584.

The fact that in *Alexander Film* there was a "representative" present in Alabama to conduct negotiations and here the negotiations were handled through other means is without constitutional significance. The test, as stated in Scripto, Inc. v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), is the "exploitation of the consumer market" by whatever means, and the nature and extent of the activities of the taxpayer in the state seeking to impose the tax levy.

■■ While we recognize that a state cannot tax the privilege of carrying on an interstate business, we know that a state has the power to place a levy on an activity either before or after movement in interstate commerce. For example, see Graves v. State, 258 Ala. 359, 62 So.2d 446 (1952) ; Paramount-Richards Theatres, Inc. v. State, 256 Ala. 515, 55 So.2d 812 (1951). We think that transferring possession of the films to the local stations and renting them for use by the stations constituted a local act which was the taxable event occurring wholly in Alabama after the completion of its interstate journey and before the return of the property in interstate commerce. cf. Sanford Service Co. v. City of Andalusia, 256 Ala. 507, 55 So.2d 856 (1951).

Paramount cites James v. United Artists Corp., 305 U.S. 410, 59 S.Ct. 272, 83 L.Ed. 256 (1939), as authority for its position that it carried on no business within this state by a duly authorized instrumentality. At first, James v. United Artists appears to favor Paramount's position. However, a close reading of *James* shows that the taxable event there was the business of "collecting income" from the rental of films. The Supreme Court did not decide in *James* whether a state could tax other events. The Court noted:

"* * * We are not here concerned with the question whether a state, by a statute appropriately framed, may lay a tax on income derived from sources within it, or whether the solicitation of the contracts may be taxed. No such taxation is attempted by § 2–(i). The taxing provisions of § 2 are restricted in their application to various enumerated classes of activities within the state, one of which, specified in § 2–(i), is that of engaging there in the business of collecting incomes. The conduct of such a business or activity by appellee requires its presence there, or that of its agent, and the collection of income within the state by the one or the other. As it is stipulated and found that appellee carries on no business within the state, except such as is involved in solicitation of the contracts, and has no collection agent there, and as the exhibitors there are bound to and do pay all sums due under their contracts to appellee at points outside the state, we can find no basis for saying that it is engaged in collecting income within the state, either as a business or otherwise." 305 U.S. at 414, 59 S.Ct. at 274.

Paramount also relies heavily upon this Court's decision in State v. Lane Bryant, Inc., 277 Ala. 385, 171 So.2d 91 (1965). Lane Bryant involved the sole question of whether a sufficient business nexus was shown to impose upon Lane Bryant the obligation to collect a use tax on purchases made outside Alabama. This Court held that since Lane Bryant merely sent catalogs by mail to residents of the state from outside the state, and filled orders outside the state exclusively by mail, it was not liable for use taxes. The Supreme Court of the United States reached a similar result in National Bellas Hess, Inc. v. Dept. of Revenue of Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967). The

Supreme Court of the United States noted in *National Bellas Hess,* that it had never held that a state could impose the duty of use tax collection and payment upon a seller whose only connection with customers in the state is by common carrier or the United States mail. If this were a case involving the *sale* of this film, we would be faced with an entirely different question. In discussing the power of Illinois to levy the tax in *National Bellas Hess,* the majority of the Court opined:

"In order to uphold the power of Illinois to impose use tax burdens on National in this case, we would have to repudiate totally the sharp distinction which these and other decisions have drawn between mail order sellers with retail outlets, solicitors, *or property within a State,* and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business. But this basic distinction, which until now has been generally recognized by the state taxing authorities, is a valid one, and we decline to obliterate it." (Emphasis added.) 386 U.S. at 758, 87 S.Ct. at 1392.

In this case, Paramount has *property* in Alabama. Consequently, *Lane Bryant* is inapplicable. There, Lane Bryant was not present in Alabama. Here, Paramount is present by the ownership of film, which is rented and used in Alabama to make money, and then returned to Paramount.

■ Having decided that use of the films in Alabama is not such an integral part of the flow of interstate commerce that it cannot be separated from it, we hold that a levy of the tax for the privilege of "renting or leasing" personal property within this state does not impose an unconstitutional burden upon interstate commerce.

The license tax is not imposed upon one soliciting in this state contracts for the shipment of goods in interstate commerce. Rather the tax is imposed upon Paramount for the privilege of leasing or renting property within this state.

Legal niceties and fine distinctions aside, Paramount rented films to Alabama television stations. Paramount received money for these rentals. Paramount did not call their agreement "rental contracts," but that is what they were. Paramount has no place of business in Alabama, but that is not the test. The statute is non-discriminatory. It imposes a tax on *all* persons who rent or lease tangible personal property, whether resident or non-resident, whether the property is shipped to the stations in interstate or intrastate commerce, and whether the rental contract is solicited by mail, personal agent or representative, or otherwise.

We conclude that the trial court incorrectly determined that Paramount was not liable for the tax and its judgment is due to be reversed.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, McCALL, FAULKNER and JONES, JJ., concur.

COLEMAN, J., dissents.

COLEMAN, Justice (dissenting).

As I understand the instant case, no person did any act in Alabama while such person was acting as the agent or representative of Paramount.

The film was present in Alabama, but Paramount was not present in Alabama. All acts done by Paramount were done outside of Alabama.

Since Paramount did no act in Alabama, I am of opinion that no basis or "nexus" is shown so that a duty is imposed on Paramount to collect or pay a tax in Alabama. I would affirm the decree which holds Paramount not liable for the tax.