This is an appeal by the State of Alabama from the Circuit Court of Jefferson County's action finding that the appellee taxpayer, Central Computer Services, Inc., is not subject to the Alabama use tax.
Title 51, § 788, Code of Alabama, (1973 Cum.Supp.), in pertinent part provides:
 "An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property . . . purchased at retail . . . for storage, use or other consumption in this state . . ."
Pursuant to this authority, the State of Alabama, through the Department of Revenue, imposed a final assessment of use taxes upon the taxpayer for its purchase of eight computer programs. The taxpayer appealed this assessment to the Circuit Court of Jefferson County. That court reversed the Revenue Department's assessment, specifically finding, ". . . that the subject property is intangible and it is not related to any tangible item and its acquisition is not subject to the Alabama Use Tax."
The determinative issue is whether, in this instance, computer "software" constitutes tangible personal property within the meaning of Tit. 51, § 788. We find that it does not and, accordingly, affirm.
The record reveals the following:
Taxpayer is a subsidiary of a bank holding company. Taxpayer's function is to provide data processing service for banks which are affiliated with the holding company and also for some banks not so affiliated. It performs this function through utilization of computer "software" or programs, which consist of instructions recorded on punched cards, magnetic tapes, and magnetic discs. These devices instruct the computer as to what functions it will perform.
Taxpayer contracted to purchase the eight programs which are the subject of this appeal from University Computing Company (hereinafter University), a Texas corporation, which is in the business of developing and writing computer programs for the banking industry. These programs are "application" programs, as opposed to "operational" programs, which means they enable the computer to achieve specific objectives, e.g., demand deposit accounting, commercial loan accounting, installment loan accounting, etc. Operational programs control the basic internal operation of the computer.
In the instant case, the application programs were delivered to the taxpayer in the form of punched cards and magnetic tapes. Without the computer programs on them, the tapes sell for $12 to $15. Unpunched, the cards cost approximately $2 per 1,000. Taxpayer here paid $236,000 for the cards and tapes containing the software.
Upon receipt of the cards and tapes, taxpayer records the information contained therein onto a magnetic disc, converting the programs from ones of general applicability into programs expressly tailored for the taxpayer's operations. That is, the programs as purchased are of general applicability to all banks. Hence, some modification is necessary in order for the taxpayer to incorporate specific information unique to its operation — interest rates, service charges, etc. — into the application program. The information on the magnetic disc is then used to program the computer. This having been accomplished, the disc is no longer necessary for the computer to execute the program. The disc may be physically removed from the proximity of the computer.
After the information contained on the original cards and tapes which the taxpayer procured from University has been transposed to the disc, the cards are destroyed and the tapes are returned to University. *Page 1158 
Mr. Dewey Crim, taxpayer's president, testified that the programs derived from the cards and tapes could be transmitted to taxpayer by means other than magnetic tapes or punched cards. He stated that the information contained on these items could be transmitted by telephone lines. Additionally, he noted that the program information could have been fed into the computer by a computer operator via the console typewriter, without utilizing either the punched cards or magnetic tapes obtained from University. Mr. Crim admitted that while theoretically the preceding was possible, as a practical matter, no individual could remember the amount of information required to program the computer. Mr. Crim testified that if the tapes or cards from University were lost en route to taxpayer or stolen, University provided taxpayer with duplicates free of charge.
Dr. John Parsa of Auburn University in Montgomery testified for the State. In addition to substantiating Mr. Crim's testimony with respect to computer operations, he stated that the transfer of the cards was not merely incidental to the transfer of the programs. Dr. Parsa said cards and tapes were necessary to the transfer of software.
 I
As previously stated, the issue before this court is whether the computer software constitutes tangible personal property within the meaning of Tit. 51, § 788, Code of Alabama 1940 (1973 Cum.Supp.).
The Department of Revenue, in an excellent brief, contends that Boswell v. Paramount Television Sales, Inc., 291 Ala. 490,282 So.2d 892, is determinative of the issue herein.
In that case, a California taxpayer, Paramount, leased films or tapes to television stations in Alabama. The taxpayer argued that it was not subject to the Alabama taxes levied on leases of tangible personal property, because the films were not tangible personal property. Paramount further asserted that the essence of the transaction was an intangible right to publish and broadcast, to which the delivery of films, reels, and containers — tangible personal property — was merely incidental. The Supreme Court of Alabama rejected Paramount's argument, stating:
 "`We agree with the state that the right to use property cannot be separated from the property itself and the "right" spoken of by appellant [Paramount] would have no value except for the use of the tape or film — the two cannot be separated. . . .'" (Boswell v. Paramount Television Sales, Inc., supra, 291 Ala. at 493, 282 So.2d at 894, quoting from American Television Co. v. Hervey, 253 Ark. 1010, 490 S.W.2d 796, 799)
Thus, the court concluded that the films were tangible personal property.
Here, taxpayer's response to the State is that the tapes and cards are not the dominant substance of the transaction. Rather, the taxpayer is merely purchasing information or knowledge, and the cards and magnetic tapes are but a means of transferring this information. Put another way, taxpayer contends that the tapes and cards are separate and distinct from the information contained therein, and the latter constitutes the substance of the transaction for which it paid $236,000.
While this is a case of first impression in Alabama, we are not without the benefit of other courts' rationale in identical circumstances. In District of Columbia v. Universal ComputerAssociates, Inc., 151 U.S.App.D.C. 30, 465 F.2d 615 (1972), the taxpayer (Universal) had purchased from IBM, among other items, a set of punched cards containing a tax program. The value of the portion of the tax program developed by IBM was $106,000, and the issue before the court was whether the punched cards constituted tangible personal property and were, accordingly, subject to the District of Columbia personal property tax. In holding for the taxpayer, the court declared:
 "It appears to us that the material of the punched cards themselves is of insignificant *Page 1159 
value. It was for the intangible value of the information stored on the cards that Universal paid IBM. How the information was created, . . . and how the information is put to the computer machine — . . . support this appraisal.
 "A. The work of IBM's experts in developing the tax information to be put on the punched tax program cards was estimated to be worth $106,000. The punching of the cards themselves, like the cost of the pasteboard and the feeding of them into the machine, is insignificant compared to the time consumed, the skill used, and the inherent value attached to the process of creating the information. What Universal paid for, what IBM charged for, and the value which is or is not subject to tax, is the intangible value created by the intellectual effort in creating this special tax program to go on the cards.
. . . . .
 "C. The punched cards themselves are placed in the machine and then taken out, and in fact could be returned to IBM. It is the information derived by the machine from the cards which stays in the computer, and which is employed repeatedly by the machine when it is used by Universal. What rests in the machine, then, is an intangible — `knowledge' — which can hardly be thought to be subject to a personal property tax. The only visible evidence of that knowledge, the punched pasteboard, could be stacked in a warehouse, returned to IBM, or destroyed, without interfering with the efficiency of the computer machine to perform its designed function." (465 F.2d 615, 617-18)
The preceding logic is equally applicable to the circumstances of this case. Mr. Crim's testimony plainly shows that what the taxpayer purchased from University was the knowledge which went into the development of the eight programs, not the tapes and cards themselves. Likewise, the physical destruction of the cards and the return of the tapes to University, after the information they contained had been transposed to the magnetic disc, indicates that the taxpayer was obtaining information, intangible as opposed to tangible property.
The Supreme Court of Tennessee, in a 1976 decision, has also addressed the question of whether computer software is tangible personal property subject to a state tax levied on such property. Commerce Union Bank v. Tidwell, Tenn.,538 S.W.2d 405. In that case, the Supreme Court of Tennessee was presented with the identical argument made herein by the State, i.e., that the purchase of consumer software is analogous to the purchase or lease of a motion picture film. The Supreme Court of Tennessee had previously held in Crescent Amusement Co. v.Carson, 187 Tenn. 112, 213 S.W.2d 27, as has the Supreme Court of Alabama in Paramount, supra, that a motion picture film was tangible personal property and subject to taxes on such property. (Crescent was quoted in the Paramount decision.) The Supreme Court of Tennessee held that computer software is not tangible personal property and, hence, the sales tax imposed on the sale of tangible personal property could not be applied to the sale of the computer software.
In Tidwell, supra, the court distinguished computer software and motion picture films. The latter constitutes an end product without which the labor, skills, and thought processes which went into its creation would prove meaningless. Absent the film, the taxpayer had nothing. On the other hand, the tapes and cards which contained the programs were in no sense of the word a finished product. It was the information they contained which constituted the valuable resource.
The court also stated:
 "A magnetic tape is only one method whereby information may be transmitted from the originator to the computer of the user. That same information may be transmitted from the originator to the user by way of telephone lines, or it may *Page 1160 
be fed into the user's computer directly by the originator of the program.
 "When the information is transferred from the tape to the computer, the tape is no longer of any value to the user; and it is not retained in the possession of the user. The information on the tape . . is not complete and ready to be used at the time of its purchase. It must be translated into a language understood by the computer. Once this information has been translated and introduced into the computer and the tapes returned or the punch cards destroyed, what actually remains in the computer is intangible knowledge; this is what was purchased, not the magnetic tapes or the punch cards. . . ." (Tidwell, supra, 538 S.W.2d at 408)
We deem the above language to be completely fitting when applied to the facts of this case.
Here, Mr. Crim testified that the information on the cards and tapes which the taxpayer purchased could just as easily have been transmitted by telephone lines. He also pointed out that, although highly improbable because of human limitations, a University employee, if he was capable of remembering the 2,000 plus instructions necessary for any one of the eight programs, could insert the information into taxpayer's computer via the console keyboard.
Moreover, the taxpayer was entitled to replacement tapes and cards from University at no additional cost if the originals were lost in the mail or stolen. Such an arrangement is consistent with taxpayer's contention that the cards and tapes were merely incidental to the sale of intangible property. We are skeptical that any business entity would freely replace $236,000 in merchandise — tangible property — by reshipping identical replacements upon the mere basis of a buyer's telephone call asserting the original items had been misplaced or stolen.
Other jurisdictions have distinguished between computer software and tangible personal property, Greyhound ComputerCorp. v. State Dept. of Assess. Tax., 271 Md. 674,320 A.2d 52; County of Sacramento v. Assessment Appeals Board,32 Cal.App.3d 654, 108 Cal.Rptr. 434, and we are convinced that that is the correct solution in this instance. See alsoWashington Times-Herald, Inc. v. District of Columbia, 94 U.S. App.D.C. 154, 213 F.2d 23 (1954); Dun Bradstreet, Inc. v.City of New York, 276 N.Y. 198, 11 N.E.2d 728.
We therefore hold that computer software does not constitute tangible personal property within the meaning of Tit. 51, § 788, Code of Alabama 1940.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.