The trial court entered a summary judgment for DCH Health Care Authority ("DCH"), on the claims of conversion and fraud alleged by the plaintiff, Linda Darlene Jones, individually and as executrix of the estate of Gladys Mae Jones, deceased. Linda Jones is not only the executrix of the estate of the decedent, but is also her daughter and sole heir. Linda Jones appeals.
On December 31, 1990, Gladys Mae Jones ("decedent"), was injured in a motor vehicle collision with James P. Swindle. On that same day, she was taken to DCH Regional Medical Center, a medical facility operated by DCH, and she remained a patient there until her death on January 27, 1991. She died from injuries received in the collision.
On January 16, 1991, while the decedent was still a patient at DCH Regional Medical Center, DCH filed in the probate office of Fayette County, Alabama, a partial statutory lien in the amount of $86,795.99, pursuant to the provisions of Ala. Code 1975, §§ 35-11-370 through 35-11-375, against "all judgments, settlements, and settlement agreements entered into . . . on account of [Gladys Jones's] injuries." This lien covered hospital expenses incurred by Gladys Jones from her admission through January 15, 1991. After she died, DCH filed in the Fayette County probate office an additional lien to cover medical expenses incurred by *Page 1323 
Gladys Jones through the date of her death. The total of both liens was $154,481.06.
Alfa Mutual Insurance Company had insured Swindle with an automobile insurance policy that had a maximum personal injury liability coverage of $20,000 per person. Alfa had also insured Gladys Jones with an automobile liability insurance policy that had a maximum medical payments limit of $10,000 per person and a maximum underinsured motorist limit of $20,000 per person. The hospital notified Alfa and Gladys Jones's estate that the statutory liens had been filed.
Alfa issued three drafts (two in the amount of $20,000 each and one in the amount of $10,000) payable to the executrix and DCH as co-payees. The gravamen of the plaintiff's claims is that DCH had no right to the two $20,000 drafts; she relies on the Wrongful Death Act, Ala. Code 1975, § 6-5-410, which provides:
 "(c) The damages recovered [under § 6-5-410] are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions."
See Board of Trustees of University of Alabama v. Harrell,43 Ala. App. 258, 188 So.2d 555 (1966), cert. denied, 279 Ala. 685,188 So.2d 558 (1966).
The holding in King v. National Spa Pool Institute,607 So.2d 1241 (Ala. 1992), has no application to this case, for no action had been filed by Gladys Jones to recover for her personal injuries prior to her death. King held that the Wrongful Death Act no longer operates to extinguish an actionthat has been filed to recover for personal injuries, where those injuries later result in death. If a personal injury action had been filed by Gladys Jones, then clearly DCH would have a lien for all reasonable charges for hospital care, treatment, and maintenance of the decedent up until the time of her death upon "all judgments, settlements and settlement agreements entered into by virtue thereof." Ala. Code 1975, §35-11-370; King v. National Spa, supra. See, also, Hogland v.Celotex Corp., 620 So.2d 621 (Ala. 1993).
The plaintiff, individually and as executrix, contends that the hospital converted these two $20,000 drafts, for the following reasons:
She says that if Alfa had issued one or more of the drafts to her either as executrix or individually, then Alfa would have been liable to DCH for the full amount of Gladys Jones's medical expenses, which totaled $154,481.06 (well in excess of the $50,000 total of the applicable Alfa coverages). Ala. Code 1975, § 35-11-372. Therefore, she says, under the circumstances of this case DCH's use of the hospital expense lien statute compelled Alfa to issue its policy payments to DCH and the executrix as co-payees. This, she says, resulted in DCH's acquiring funds over which it could not exercise dominion, possession, title, or control under Alabama law. Ala. Code 1975, § 6-5-410(c). The hospital's misusing these statutes, she says, while completely ignoring the clear and specific terms of the Wrongful Death Act, forced her as executrix to indorse all checks to the hospital for the payment of medical expenses, regardless of whether they were wrongful death benefits.
The undisputed evidence is that the executrix, who was a co-payee on all three drafts, was given these drafts by Alfa. She consulted a lawyer while she had possession of these drafts. She telephoned DCH from her lawyer's office and secretly tape recorded this conversation. She was accompanied to the hospital by a private investigator, who secretly tape recorded the conversation between the executrix and the employees of the hospital.
 "Four different actions may constitute conversion: a wrongful taking, a wrongful detention, an illegal assumption of ownership, or an illegal use or misuse. National Surety Co. v. Applied Systems, Inc., 418 So.2d 847 (Ala. 1982)."
Tyler v. Equitable Life Assurance Society of the United States,512 So.2d 55, 57 (Ala. 1987). *Page 1324 
It is not clear which of these kinds of conversion the executrix is proceeding under, for DCH was a co-payee of all three of the drafts; and the executrix, after consulting a lawyer, indorsed and delivered these drafts to DCH, without protest. Likewise, the executrix did not demand the return of these drafts; she merely filed this action.
"In order to constitute conversion, non-consent to the possession and the disposition of the property by defendant is indispensable." 89 C.J.S. Trover Conversion § 5, p. 535 (1955). DCH showed that the executrix consented to its having possession of the three drafts. This showing was not refuted by the executrix.
 "Where the property, the subject-matter of the action of trover, has come into the possession of the defendant by the consent of the plaintiff, and the plaintiff relies on a wrongful detention of the property by defendant to sustain his action, the authorities are agreed that plaintiff has the burden of showing a demand by the plaintiff and a refusal of the defendant to deliver the possession."
Clay County Abstract Co. v. McKay, 226 Ala. 394, 397,147 So. 407, 410 (1933). DCH showed that the executrix made no demand for the return of the drafts. This showing was not refuted by the executrix.
If the plaintiff can show an illegal user or misuser, a demand and refusal is not essential to the right of recovery in conversion. Clay County Abstract Co. v. McKay, supra.
In Board of Trustees of the University of Alabama v. Harrell,43 Ala. App. 258, 260-61, 188 So.2d 555, 557 (1965), Presiding Judge Price wrote for the Court of Appeals:
 "The wrongful death statute 'does not allow the damages to be paid by the administrator on last illness . . . of the deceased.'
". . . .
 "In a wrongful death action the personal representative is only the nominal or formal party. He sues as statutory trustee for the benefit of the designated beneficiaries, who are the real parties in interest."
However, in the case before us the executrix is also the sole beneficiary under the Wrongful Death Act. There is no "illegal user or misuser" in Jones's voluntarily paying her deceased mother's hospital bill with money that under the Wrongful Death Act would belong to Jones. All of the evidence showed that she did this with full knowledge of what she was doing and without insisting upon her right to the two $20,000 drafts freed from the hospital's lien.
The plaintiff, individually and as executrix, contends that DCH was guilty of fraud, for the following reasons:
She says DCH made a misrepresentation by filing the statutory liens. She says it made a further misrepresentation by contacting Alfa and informing Alfa of its claims, because that notice to Alfa then prohibited Alfa from issuing any drafts without making DCH a co-payee, unless Alfa wished to incur direct liability to the hospital for the decedent's entire medical bill under § 35-11-372. DCH, the plaintiff says, thereby actively used the lien statute to secure on a hospital lien a payment that it was not legally entitled to under §6-5-410.
The trial court properly entered the summary judgment as to the fraud claim, because there was no justifiable reliance by the plaintiff, either individually or as executrix, as a matter of law, for the following reasons: It is apparent that the plaintiff had full knowledge of the law, for she had retained lawyers and was acting on advice of her lawyers when she took the drafts to DCH and indorsed and delivered them to DCH. She had secretly tape recorded a conversation with DCH employees, from her lawyer's office, before taking the drafts to DCH. She was accompanied by a retained private investigator, who had a secret tape recorder, when she took the drafts to DCH. The plaintiff, either individually or as executrix, did not justifiably rely on any representations by DCH. *Page 1325 Smith v. MBL Life Assurance Corp., 589 So.2d 691 (Ala. 1991).
It would be health care reform of a most peculiar kind, if, under our established standard of review, we were to permit the plaintiff to prevail on the hospital's motion for summary judgment on either the conversion count or on the fraud count.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.