[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 08-12090
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00522-CV-2-MHT

KOCH FOODS OF ALABAMA, LLC,
an Alabama Limited Liability Co.,

Plaintiff-Counter-
Defendant-Appellee
Cross-Appellant,

versus

GENERAL ELECTRIC CAPITAL CORPORATION,

Defendant-Counter-
Claimant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

**(December 18, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Appellant General Electric Capital Corporation ("GECC") appeals the district court's entry of summary judgment in favor of Appellee Koch Foods of Alabama, LLC ("Koch") on GECC's claim for conversion of a chicken deboning line and a spiral freezer (collectively "Equipment"). Koch cross appeals the district court's entry of summary judgment in favor of GECC on Koch's claim for a declaratory judgment that Koch owns the Equipment or, alternatively, its claim for the cost of storing the Equipment under the doctrine of unjust enrichment. For the reasons set forth below, we affirm.

## I. BACKGROUND

Sylvest Farms, Inc. ("Sylvest") operated a poultry processing plant. On December 29, 2005 Sylvest leased a chicken deboning line and spiral freezer from GECC. The written lease stated: "All Equipment shall at all times remain personal property of [GECC] even though it may be attached to real property." On April 18, 2006, Sylvest filed for bankruptcy. Appellee Koch purchased Sylvest's assets at a bankruptcy sale. Koch was given the opportunity to reject or assume the GECC lease. Koch chose to reject it. However, Koch continued seamless operation of the processing plant including use of the deboning machine.[1]

_____

[1] Although the spiral freezer remains in the processing plant, it was never made operational and Koch has never used it.

2

In August of 2006, GECC discovered that Koch was using the deboner. On January 2, 2007, after failed settlement negotiations, GECC sent Koch a letter demanding past and future lease payments and warning that failure to pay could subject Koch to an action for conversion of the Equipment. On February 14, 2007, Koch responded with an offer to purchase the Equipment and, in the event of rejection, informed GECC it would purchase new machinery. The letter also gave GECC permission to enter the plant to remove the Equipment provided that GECC indemnify Koch for any damage caused to the plant by the removal. GECC rejected the offer but never attempted to reclaim the Equipment. In April of 2007, Koch removed the deboner in order to install new equipment and placed it in an adjacent parking lot.

On May 25, 2007, Koch filed a complaint against GECC in state court seeking a declaratory judgment that it owned the Equipment. Alternatively, Koch asserted that GECC was liable for the storage cost of the Equipment under the doctrine of unjust enrichment. GECC removed the action to federal court and asserted a counterclaim for conversion. Both parties filed for summary judgment. The district court entered summary judgment in favor of GECC on Koch's claims for declaratory judgment and unjust enrichment and in favor of Koch on GECC's conversion counterclaim. GECC filed a notice of appeal on April 21, 2008 and

3

Koch cross-appealed.[2]

## II. DISCUSSION

First, we will address whether the lease agreement between Sylvest and GECC preserved the character of the Equipment as personal property. Next, we turn to GECC's claim for conversion. Third, we discuss Koch's equitable claim for unjust enrichment. Fourth, we address whether Koch waived the attorney-client privilege with respect to an e-mail inadvertently produced during discovery. Finally, we consider Koch's argument that it is entitled to an award of costs under Federal Rule of Civil Procedure 68.

A. The Character of the Equipment

Under Alabama law, the Equipment is GECC's personal property. The chattel character of a fixture may be retained by an agreement between the seller and purchaser even "against third persons purchasing or taking a mortgage upon the land upon which [the fixture] stands, bona fide and without notice of such agreement." Mobile Cab and Baggage Co., 74 So. 2d 498, 502 (Ala. 1954). Sylvest and GECC entered into a lease agreement stating that the Equipment

---

[2]    We review the entry of summary judgment de novo. See Whately v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c).

would remain GECC's personal property. Under the rule of <u>Mobile Cab</u>, the Equipment remained GECC's personal property even after Koch purchased the plant in which the Equipment was installed.

Koch attempts to distinguish this line of Alabama precedent. Koch argues that only a landowner can enter into an agreement preventing chattels from becoming fixtures. At the time it entered into the equipment lease with GECC, Sylvest was technically the lessee of the processing plant.[3] However, Koch's brief informs this court that Sylvest exercised its option to purchase the processing plant before selling the property in bankruptcy.[4] Accordingly, at the time Koch acquired the property, the landowner (Sylvest) was party to the agreement stating that the Equipment remained GECC's personal property. Thus, Koch's attempt to distinguish this case is unpersuasive.[5]

---

[3]     Sylvest entered into an arrangement with Hodges Bonded Warehouse whereby Hodges purchased the poultry processing plant and simultaneously leased the plant to Sylvest under a triple net lease ("Facility Lease"). Under a triple net lease "the lessee pays all the expenses, including mortgage interest and amortization, leaving the lessor with an amount free of all claims." <u>Black's Law Dictionary</u> 908 (8th ed. 2004). Sylvest would become the owner of the plant at the end of the lease or upon exercising its option to purchase the plant at any time by prepaying the remaining rent.

[4]     Furthermore, Koch's brief in opposition to GECC's motion for summary judgment, filed in the district court, states that the Facility Lease "was essentially equivalent to an installment purchase of the Facility . . . Sylvest had the control of and in reality owned the Facility."

[5]     Because the holding in <u>Mobile Cab</u> dictates the outcome of this dispute, we need not address the parties' argument over whether the Equipment became fixtures under a traditional

B.  GECC's Claim for Conversion

The district court determined that GECC's conduct implied consent to Koch's retention, disposition and use of the Equipment.[6]  We discern no reversible error.  Lack of consent is indispensable to an action for conversion.  Jones v. DCH Health Care Auth., 621 So.2d 1322, 1324 (Ala. 1993).  GECC asked not for return of the Equipment but for rental payments.  Furthermore, GECC made no attempt to reclaim the Equipment despite Koch's written offer to allow GECC to remove the Equipment.[7]  GECC claims that the offer was unreasonable because it required GECC to indemnify Koch for damage to the plant.  To the contrary, under Alabama law, if the detachment of the chattel would "occasion some diminution in the value of the freehold, as it would have stood had the attachment not been made, then the depreciation must first be made whole" to the landowner, before the right of the chattel owner can be recognized.  Warren v. Liddell, 20 So. 89, 94

fixtures analysis.

[6]     Contrary to GECC's argument, the district court did not find that GECC was required under Alabama law to make a demand for possession of its Equipment.  The court simply concluded that, on the facts of this case, GECC's conduct – including its failure to request the return of the Equipment, its request for rental payments, and its decision not to accept Koch's offer to enter the plant to remove the Equipment – implied consent to Koch's use of the Equipment.

[7]     GECC did request surrender of shrink-wrapping equipment it had leased to Sylvest.  Koch complied with the request.  In comparison, GECC took no action with respect to the equipment now at issue.  The district court noted that this further demonstrated GECC's implied consent to the retention and use of the remaining equipment.

(Ala. 1896). Thus, GECC's argument has no merit.

GECC also argues that even if it consented to Koch's use of the Equipment, it did not consent to the disposition of the deboner, i.e. its removal and storage in an outside location. Again, we find no error in the district court's determination that GECC's conduct implied consent to the disposition of the deboner. Koch informed GECC in writing that it would purchase new equipment if GECC was unwilling to accept its offer to purchase the current deboner. In the same letter, Koch offered to allow GECC to enter the plant to remove the Equipment. GECC never attempted to reclaim the deboner. Thus, Koch was left with no choice but to remove the deboner itself when the new equipment arrived.

Finally, GECC argues that Koch converted the Equipment by wrongfully asserting ownership. Conversion is "the wrongful exercise of dominion over property." Ott v. Fox, 362 So.2d 836, 839 (Ala. 1978). It can be established, among other means, by "an illegal assumption of ownership." Id. However, Koch did not assert ownership of the Equipment until it filed an action for a declaratory judgment in state court in May of 2007, after GECC threatened to bring a suit for conversion. Prior to that time, Koch negotiated with GECC to resolve the matter, including making offers to purchase the Equipment and allowing GECC access to the plant to retrieve the Equipment. Thus, Koch did not

7

illegally assume ownership of the Equipment.

Accordingly, we conclude that the district court did not err in granting summary judgment in favor of Koch on GECC's conversion claim.[8]

C. The Claim for Unjust Enrichment

Koch asserts that GECC is liable for storage costs from the time it demanded that GECC remove the deboner from its plant to the present. The district court concluded that "nothing suggests that the trial court must step in to balance the equities in this case." We agree. Unjust enrichment is "an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1123 (Ala. 2003). Koch used the GECC deboner without payment for ten months until it was able to secure new equipment. Thus, we cannot conclude that GECC has been unjustly enriched by Koch's retention of the equipment.

D. The Attorney-Client Privilege

We conclude that the district court did not abuse its discretion in granting Koch's motion for a protective order. During discovery, Koch inadvertently

---

[8] Because we affirm the grant of summary judgment in favor of Koch, we need not address the issue of damages.

8

produced an e-mail protected by the attorney-client privilege. There is no controlling Alabama precedent on waiver of the attorney-client privilege through inadvertent disclosure.[9] However, after carefully considering the limited Alabama authority available, the district court concluded that a totality-of-the-circumstances test provides for a comprehensive and sensitive assessment of inadvertent waivers and would likely be adopted by the Alabama Supreme Court if it confronted the issue. See Alldread v. City of Grenada, 988 F.2d 1425, 1434 (5th Cir. 1993). We find no error in the district court's conclusion.

Under the totality-of-the-circumstances test, the court considers five factors: "(1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." Id. at 1433. GECC argues that Koch failed to adequately review the documents before producing them. In support of this argument, GECC alleges that Koch inadvertently produced at least three privileged e-mails.[10] However, the privileged e-mail at issue here was found

---

[9]  "While findings of law are ordinarily reviewable de novo, this Court will defer to a district court's interpretation of unsettled questions of the law of the state where the court sits." Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1444 (11th Cir. 1991). We review the entry of a protective order for an abuse of discretion. See Chrysler Intern. Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002).

[10]  GECC also claims that the Xu affidavit supports the conclusion that the documents were carelessly produced. To the contrary, the affidavit states: Xu reviewed the documents several times; the e-mail was inserted in the middle of an equipment lease; and Xu

tucked in the middle of a 37 page lease agreement contained in a production of 3,758 pages of documents. The document was included in Koch's privilege log and Koch immediately objected and asserted its privilege when GECC presented the document at a deposition of Koch's Chief Financial Officer. Applying these facts to the totality-of-the-circumstances test, we find no abuse of discretion.

E. Offer of Judgment

Koch argues that it is entitled to an award of costs under Federal Rule of Civil Procedure 68 incurred from the time it served an offer of judgment on GECC. However, Koch's brief also states that "the District Court might not have been aware of such an offer." Consequently, we conclude that Koch did not bring the offer of judgment to the attention of the district court. This Court will not consider on appeal issues not raised before the district court. Charles v. Burton, 169 F.3d 1322, 1327 n.8 (11th Cir. 1999). Therefore, we conclude that Koch waived this issue on appeal.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[11]

---

never intended to produce the document.

[11] Appellant's request for oral argument is DENIED.