PITTMAN, Judge.
Antoinette Cahill Smith (“the former wife”) appeals from a judgment that, among other things, denied her request to enforce a claimed marital interest in an investment-equity account held by Shannon Cahill (“the former husband”).
The parties were married in March 1986 and were divorced by a judgment entered on July 30, 1993. That judgment incorporated an agreement of the parties in which custody of the parties’ three minor children were awarded to the former wife, the former husband was ordered to pay child support, and the former husband was ordered to pay the former wife $10,000 “for any interest she has in the farm equipment and the chicken house equipment” and to pay, over 5 years, an additional $20,000 plus 6% interest for the former wife’s interests in both the marital residence and the marital property awarded to the former husband. Beginning in 1988, the former husband had operated a poultry farm for Gold Kist and had participated in a Gold Kist cooperative program, also known as the “patronage equity program”; he continued that work following the parties’ divorce. Around 2004, Gold Kist converted from a cooperative association to a for-profit corporation, eventually notifying the former husband that the account with the patronage equity program (“the equity account”) was worth $337,134.76 and that he was entitled to 36,472 shares of Gold Kist stock.
In 2005, the former husband filed a modification action seeking to lower his monthly child-support obligation; at trial the following year, the parties reached an agreement regarding custody, support, and health-insurance coverage for the children. On June 8, 2006, the trial court entered a modification judgment that incorporated the agreement of the parties on the issues of child custody, support, and health insurance.
In January 2009, the former wife filed an action seeking to obtain (1) previously unpaid child support and (2) a share of the equity account; she asserted that, throughout the parties’ divorce proceedings and the modification litigation, the former husband had suppressed the existence and value of the equity account and had consistently understated his income in order to avoid paying appropriate child support. Subsequently, the former husband filed an answer; he also filed a counterclaim in which he requested custody of *695 the parties’ sole remaining minor child. At a pendente lite hearing in May 2009, that child’s custody was awarded to the former husband. Before trial, the former husband filed a motion for a summary judgment as to the former wife’s claims, but that motion was denied.
The trial court conducted an ore tenus proceeding on all pending matters over two days: October 22-23, 2009. The only witnesses were the parties and the three children, two of whom had reached the age of majority by the time of trial. The bulk of the testimony focused on the former wife’s allegations that the former husband had lied about his income and assets and, therefore, that she had borne a larger share of the children’s expenses than she should have. In addition, she adduced evidence tending to show that the equity account had been an existing marital asset that had not been divided in the parties’ 1993 divorce judgment. Lastly, the parties’ youngest child, who was 17 years old at the time of trial, testified that he was not comfortable around the former wife’s new boyfriend and that he would rather live with the former husband until high-school graduation.
At the conclusion of the second day of trial, the trial court entered a judgment on partial findings as to the issues raised by the former wife. The parties’ agreement regarding future child-custody, child-support, and postminority-support issues was read in open court, and that agreement was incorporated into a final judgment on October 26, 2009. The following day, the trial court entered an amended judgment to correct a clerical error regarding proper payment of child support. On November 20, 2009, the former wife filed a postjudgment motion. In January 2010, the trial court conducted a hearing on that motion and then denied the post-judgment motion. The former wife filed a timely notice of appeal. She challenges the trial court’s judgment to the extent that it precludes her from claiming marital rights as to the equity account and from proceeding to trial against the former husband on claims of fraud and conversion relating to the equity account.[1]
Alabama law is well settled that,
“ ‘when a trial court does not make specific disposition of an asset in a divorce [judgment], the parties are left in the same position relative to that asset as they were in before the divorce.’ Ex parte Davis, 495 So.2d 672, 673 (Ala.1986); McGuire v. Horton, 586 So.2d 9, 9 (Ala.Civ.App.1991); Lacy v. Lacy, 403 So.2d 251, 254 (Ala.Civ.App.1981); and Miller v. Miller, 391 So.2d 119, 120 (Ala.Civ.App.1980). The failure to divide each item of property does not render void an otherwise proper divorce judgment. Miller, 391 So.2d at 120.”
Brown v. Brown, 26 So.3d 1210, 1219 n. 2 (Ala.Civ.App.2007); see also Smith v. Smith, 892 So.2d 384, 389 (Ala.Civ.App.2003), and Hocutt v. Hocutt, 491 So.2d 247, 249 (Ala.Civ.App.1986). However, a divorce judgment dividing marital property between the parties is not subject to modification, except for clerical errors, after the lapse of 30 days from the entry of the judgment. See McGuire, 586 So.2d at 10 (citing Bromley v. Bromley, 449 So.2d 1252, 1254 (Ala.Civ.App.1984)); see also Clements v. Clements, 990 So.2d 383, 395-96 (Ala.Civ.App.2007).
*696 The former husband asserts that the former wife is attempting to improperly modify the property-settlement provisions of the parties’ divorce judgment, that her action is barred by the equitable defense of laches and by the doctrine of res judica-ta, that the former husband never concealed assets from the former wife, and that the equity account is a retirement account and not subject to division pursuant to § 30-2-51(b), Ala.Code 1975. For her part, the former wife insists that she has not improperly attempted to reopen the property-division aspects of the divorce judgment but that she is instead asserting a right to a claimed marital share of the equity that had accrued in the equity account during the parties’ marriage (i e., from 1988-1993). She points out that the divorce judgment was silent as to that marital asset, and she claims that, therefore, her interest in that asset is the same as it was during the marriage. See Ex parte Davis, 495 So.2d at 673, and McGuire, 586 So.2d at 9.
At trial, the former wife adduced evidence indicating that the former husband had concealed the value of the equity account throughout the marriage and during the divorce proceedings; the former husband admitted that in 2004 his years of working with Gold Kist had resulted in an award of 36,472 shares of Gold Kist stock, the proceeds of which he had deposited into a brokerage account in March 2005. Although the trial court did not allow the former husband to testify as to the value of that stock at the time that he liquidated it, the former wife adduced evidence indicating that the market price of Gold Kist stock in May 2005 was $21.81 per share, for a total potential value of $758,951. The former wife used the former husband’s accounting documents to show that, between 1988 and 1993, the equity account had accrued a value of $197,829.21. She offered a financial report that itemized equity earnings received from Gold Kist for the fiscal years of 1988-89 ($66,200.44); 1989-90 ($61,511.69); 1990-91 ($30,383.06); and 1992-93 ($39,734.02).[2] According to a financial statement provided at the time of Gold Kist’s conversion from a nationwide cooperative of farmers to a publicly traded corporation in 2004, the equity account had increased in value to $337,134.76.
Although the former husband contends that the former wife had notice of the equity account during the marriage, he asserts that the equitable defense of laches and the doctrine of res judicata bar her from bringing this action now because her claim to the asset should have been asserted, at the latest, during the previous modification proceeding in 2005-06. In rebuttal, the former wife testified that the former husband had not included the equity account in the asset list he had prepared for the parties’ original divorce proceeding; moreover, she noted that he had failed to accurately disclose his finances during the divorce proceeding or the modification proceeding. She offered as an exhibit a copy of the former husband’s September 27, 2005, responses to discovery requests in that modification litigation in which he listed “every asset,” but that list did not include the brokerage account, the equity account, or the 36,472 shares of Gold Kist stock.
During that modification litigation, the former husband asserted on his CS-41 “Child-Support-Obligation Income Statement/Affidavit” form that his monthly income was $2,582; moreover, he testified at that proceeding that his total remaining *697 assets were: “two homes, four chicken houses, a composter, 72 acres of land, chicken houses [two of which had been destroyed and had been rebuilt] for $70,000 and for $84,000 [respectively].... a new house [constructed] for $84,000 and insured ... for $115,000, [a c]omposter ... and $140,000 that [was] owed on those assets.” He also listed “[a]n RTV, a Rabo-ta RTV, a Toyota pick-up truck, a tiller for cake in the chicken houses [having a] fair market value of $300, and a sprayer for $115.” In response to an interrogatory in the modification litigation, the former husband answered a request to disclose “each and every bank account, savings account, or checking account, maintained or [into which you have] deposited funds into since the day of divorce” with a list of three bank accounts having deposits totaling only $5,500.
During discovery in the instant litigation, the former husband admitted that he had opened a brokerage account on March 22, 2005, and that he had funded that account with funds from the equity account and the proceeds of the sale of the Gold Kist stock. As of July 29, 2005, according to a brokerage-account statement produced during discovery in this action, that account contained $754,751.23. The former wife asserted, and adduced documentation indicating, that the former husband had systematically concealed the equity account, a substantial marital asset, during the previous modification action such that the former wife could not have discovered the truth because the former husband had failed or refused to fully comply with Rule 26(e)(2)(A), Ala. R. Civ. P. See also Barganier v. Barganier, 669 So.2d 933, 937 (Ala.Civ.App.1995), and Wicks v. Wicks, 49 So.3d 700, 702 (Ala.Civ.App.2010).
“The doctrine of res judicata bars relitigation of (1) the same issues (2) previously litigated between substantially identical parties and (3) finally adjudicated on the merits (4) by a court of competent jurisdiction.” Neal v. Neal, 856 So.2d 766, 778-79 (Ala.2002). “If these elements are present, then the former judgment is an absolute bar to any subsequent suit on the same cause of action, including any issue which was or could have been litigated in the prior action.” Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190, 1199 (Ala.1978); see also Ex parte Capstone Dev. Corp., 779 So.2d 1216, 1218 (Ala.2000). The former wife adduced undisputed evidence revealing that the former husband had systematically hidden the existence and value of the equity account from her and the court in the previous two actions between the parties. Because the former wife adduced evidence to the effect that she had not had a full and fair opportunity to litigate the issue of the parties’ relative interests in the equity account, and because the parties’ interests in the equity account have never been adjudicated on the merits, we conclude that the doctrine of res judicata does not apply in this case; as noted below, neither does the equitable defense of laches.
On the record, the trial court opined that in order to address the former wife’s marital interest in the equity account, she needed to produce a signed document indicating that she was a co-owner of that account. Although the former husband may be entitled to argue that the Gold Kist stock, which did not exist until 2004 at the earliest, was his separate property because he obtained that stock following the entry of the parties’ divorce judgment, the same is not true regarding the equity account. The documents produced during discovery in this modification litigation indicate that the equity account began to accumulate value as soon as the parties jointly purchased the poultry farm in 1988. The former wife offered documents indi- *698 eating that the parties had signed a contract to purchase the farm, relying primarily on a down payment from the former husband’s sale of his business and the former wife’s annual nurse’s salary as the collateral for the purchase. Although the parties’ divorce judgment awarded the farm, the poultry, and the related farm equipment to the former husband, the equity account was not mentioned at all. Thus, we agree with the former wife that the equity account remained an undivided joint marital asset following the entry of the divorce judgment. See Ex parte Davis, 495 So.2d at 673, and McGuire v. Horton, 586 So.2d at 9.
 In Barganier v. Barganier, supra, this court noted:
“A property agreement may be altered, amended, or vacated if one party procures the agreement by fraud or conceals assets or liabilities. Ex parte Brice, 340 So.2d 792, 794-95 (Ala.1976); Nelson v. Nelson, 408 So.2d 101, 103 (Ala.Civ.App.1981). Our appellate courts have previously sanctioned efforts to set aside or modify divorce judgments that were obtained on the basis of information withheld from one party by the other. See, e.g, Brice, 340 So.2d at 794-95 (the trial court’s modification of the divorce judgnent was affirmed because the wife had concealed several debts from the husband and the court during negotiations regarding the terms of the parties’ separation agreement); Worthey v. Worthey, 491 So.2d 953 (Ala.Civ.App.1986) (a summary judgment entered in the wife’s action to set aside the divorce judgment was reversed and the case was remanded for trial because the husband had induced the wife to sign a separation agreement by misrepresenting to the wife the parties’ net worth, telling her the parties had only debts when they actually had a net worth of approximately $1,000,000). A separation agreement incorporated into a divorce judgment must be fair, reasonable, and just, and free from fraud, duress, or other coercion. Kunkel v. Kunkel, 547 So.2d 555, 556 (Ala.Civ.App.1989).”
669 So.2d at 937-38. This case has similarities to Worthey v. Worthey, 491 So.2d 953 (Ala.Civ.App.1986), in which this court reversed a summary judgment for a former husband in an action in which a former wife had sought to set aside their divorce judgment, which had been based upon an agreement of the parties, because the agreement had been based on misrepresentations regarding assets by the former husband. Here, because the undisclosed asset — the equity account — is still an undivided marital asset, granting relief to the former wife in no way impinges upon the finality of the 1993 or 2006 judgments.[3]
The former husband also asserts that application of Rule 60(b), Ala. R. Civ. P., bars the former wife’s action in this case because, he claims, that rule and Alabama caselaw interpreting it establish that requests for relief from a judgment based upon “fraud” must be made within four months of the entry of that judgment. In this case, however, the former wife specifically asserts that she is not seeking to set aside the parties’ divorce judgment; there *699 fore, Rule 60(b) does not apply. Thus, to the extent the trial court’s judgment on partial findings is referable to the time constraints of Rule 60(b)(2) or 60(b)(3), we conclude that that judgment was entered in error.
The former husband also asserts that § 30 — 2—51(b)(1), Ala.Code 1975, bars a division of his brokerage account because the parties had not been married the 10 years necessary to allow division of that account pursuant to Alabama statutory law.[4] Although it is clear from the record that the parties were not married the requisite 10 years, we can identify no evidence in the record that would tend to establish the fact that the equity account was in the nature of a “retirement” account during the parties’ marriage. The mere fact that the former husband testified that in 2005 he had placed all the equity-account assets and the proceeds from selling the Gold Kist stock into a brokerage “retirement” account in his own name does not overcome the former wife’s assertion that the preexisting equity account, at least insofar as it existed between 1988 and 1993, was an undivided marital asset. Having reviewed the former husband’s defenses and the evidence regarding the equity account adduced at trial, we can only conclude that the trial court erred in precluding the former wife from asserting fraud and conversion claims against the husband and pursuing a division of the undivided marital asset, the equity account.
The trial court’s judgment is reversed, and the cause is remanded for proceedings consistent with this opinion. The former wife’s request for an award of an attorney fee on appeal is granted in the amount of $1,500; the former husband’s request for an award of an attorney fee on appeal is denied.
REVERSED AND REMANDED.
THOMPSON, P.J., concurs.
THOMAS, J., concurs in the result, without writing.
MOORE, J., concurs in the result, with writing, which BRYAN, J., joins.

. Because the former wife did not raise the argument that the former husband’s failure to properly report his income in the previous support-modification action resulted in underpayment of appropriate child support in her brief to this court, we consider that issue to be waived on appeal. See Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003).

. We cannot determine from the testimony and the other admitted documents regarding the equity account whether the fiscal year 1991-92 was inadvertently omitted, whether no earnings occurred in that year, or whether the parties were separated during that year.

. Regarding the former husband’s laches argument, we note that " 'one who "seek[s] equity must do equity” and "one that comes into equity must come with clean hands.” Ex parte Parish, 808 So.2d 30, 35 (Ala.2001) (quoting J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala.1999), quoting in turn Levine v. Levine, 262 Ala. 491, 491, 80 So.2d 235, 237 (1955)). Because we have concluded that the evidence indicated that the former husband had concealed the equity account, we will not apply an equitable principle in favor of the former husband.

. That statute provides: “The judge, at his or her discretion, may include in the estate of either spouse the present value of any future or current retirement benefits, that a spouse may have a vested interest in or may be receiving on the date the action for divorce is filed, provided that,” among other conditions, "[t]he parties have been married for a period of 10 years during which the retirement was being accumulated.”