PITTMAN, Judge.
Antoinette Cahill Smith (“the former wife”) appeals from a judgment of the Marshall Circuit Court (“the trial court”) in a postdivorce action. We. reverse and remand with instructions.
This is the third time these parties have been before us. :'Our decisions in the two previous-appeals are Smith v. Cahill, 72 So.3d 692 (Ala.Civ.App.2011) (“Smith I”), and Smith v. Cahill, 141 So.3d 1047 (Ala.Civ.App.2013) (‘‘Smith II ”).

Factual Background and Procedural History

The former wife and Shannon Cahill (“the former husbánd”) married in 1986 and divorced in 1993. In 1988, the parties jointly purchased a poultry farm using marital funds. The former husband subsequently operated the poultry farm pursuant to an agreement with' Gold Kist, which was then a cooperative association. Under the terms of that agreement, Gold Kist, while it was a cooperative association, assigned value to an equity account in the former husband’s name (“the equity account”) based on Gold Kist’s profits. The parties’ 1993 divorce judgment (“the divorce judgment”), which 'incorporated an agreement between the parties regarding the division of the marital property, awarded the former husband the tangible assets of the poultry farm but did not dispose of the good wili of the poultry farm (“the good will”) or the equity account.
During the parties’ marriage, the equity account" accrued a value of $197,829.21. In 2004, Gold Kist converted from a cooperative association to a for-profit corporation. When it. converted to a corporation, Gold Kist notified the former husband that the equity account had a value of $337,134.76 and that, based on that value,- he was entitled to 36,471 shares of Gold Kist stock (“the 36,471 shares”). Thereafter, on or before May 11, 2006, Gold Kist issued the former husband the 36,471 shares to replace the equity account, and the former husband placed the 36,471 shares in a brokerage account (“the brokerage account”). Later in 2005, the former husband sold the 36,471 shares and received net proceeds of *560 $724,408.27. The former husband subsequently used the entire $724,408.27 he had received from the sale of the 36,471 shares for his benefit.
In 2005, the former husband brought a postdivorce action against the former wife in which he sought a reduction in the child support he had been ordered to pay in the divorce judgment. During discovery in that postdivorce action, the former wife propounded discovery requests seeking a list of all the former husband’s assets. The former husband’s responses to those discovery requests did not list among his assets the equity account, the 36,471 shares, or the $724,408.27 that had resulted from the former husband’s selling the 36,471 shares.
In 2009, the former wife brought the present postdivorce action against the former husband] The former wife alleged, among other things, that the equity account had been marital property when the parties divorced; that the former husband had not revealed the existence of the equity account before the parties agreed on the division of the marital property; that the divorce judgment had not disposed of the equity account; and that,; therefore, she had continued to own a share of the equity account' after the divorce and owned a share of the funds attributable to the equity account. Based on those allegations, the former wife claimed, among other things, that she was entitled to a determination that she had continued to own a share of the equity account after the divorce and that she owned a share of the funds ' attributable to the equity -account and that she was entitled to a judgment awarding her the value of her share (“the equity-account claim”). In addition, she claimed that she was entitled to an award of damages for fraudulent suppression and conversion.
In response, the former husband asserted that the equity account had never been marital property because, he said, that account had been titled in his name only and, therefore, had been his separate property when the parties divorced. He also asserted that the former wife’s equity-account claim was barred because, he said, it constituted (1) an improper attempt to modify the division of the parties’’ marital property in the divorce judgment more than 30 days after the entry of that judgment and (2) an improper attempt to obtain a share of his retirement account based on a marriage that had lasted less than 10 years. Moreover, he asserted that the equity-account claim was barred by (1) the doctrine of laches, (2) the doctrine of res judicata, and (3) the time limits for seeking relief from a judgment contained in Rule 60(b), Ala. R. Civ. P. In addition, he asserted that he was not liable for fraudulent suppression and conversion.
The trial court conducted a bench trial. At the close of the former wife’s ease-in-ehief, the trial court granted the former husband’s motion for a judgment on partial findings as to the equity-account claim, the fraudulent-suppression claim,-and the conversion claim (“the judgment on partial findings”). The parties subsequently settled the former wife’s other claims. The former wife then filed a postjudgment motion challenging the judgment on partial findings, which the trial court denied. Thereafter, the former wife appealed to this court.
In Smith I, this court reversed the judgment on partial findings and remanded the cause. Although a majority of the, judges of this court did not join in the main opinion in Smith I, an examination of the main opinion and the special writing concurring in the result reached by the.main opinion indicates that four judges concurred in holding that the equity account was marital property when the parties divorced despite the fact that it was titled in *561 the former husband’s name, 72 So.3d at 698 and 700; that the divorce judgment had not disposed of the equity account, id.; and that, because the divorce judgment had not disposed of the equity account, the former wife’s equity-account claim did not seek an improper modification of the property division in the divorce judgment, id. Moreover, an examination of the main opinion and the special writing indicates that four judges concurred in rejecting the former husband’s other defenses to the former wife’s equity-account claim, although a majority of the court did not agree on the rationales for rejecting those defenses. All the judges concurred in the judgment of this court (1) reversing ‘the judgment on partial findings and (2) remanding the cause. 72 So.3d at 699-700. However, an exam'ination of the main opinion and the special writing indicates that a majority of the judges- did not join in giving the trial court specific instructions regarding how the cause was to proceed on remand. See id.
After this court remanded the cause, the former wife amended her complaint to add a claim alleging that the divorce judgment had not disposed of the good will and seeking a determination of the value of her share of the good will and a judgment awarding her an amount equal to that value (“the good-will claim”). Thereafter, the trial court resumed the bench trial, which had been terminated at the close of the former wife’s case-in-chief by (1) the granting of the judgment on partial findings and (2) the parties’ settlement regarding the former wife’s claims that were not disposed of by the judgment on partial findings. .After' the trial, the trial court entered a judgment awarding the equity account arid any value the "good will may have had to the former husband and finding in favor of the former husband as to the former wife’s fraudulent-suppression claim and conversion- claim. The former wife then appealed from that judgment.
In Smith II, we affirmed the judgment of the trial court as to the fraudulent-suppression claim; reversed the judgment of the trial'court as to the equity-account claim, the good-will claim, and the conversion claim; and’remanded the cause with instructions for the trial court to determine, based upon the evidence already presented, the amount the former wife was entitled to recover on the equity-account claim, the good-will claim, and the conversion claim and to enter a judgment awarding the former wife that amount. 141 So.3d at 1056.
After we remánded the cause, the trial court held a hearing at which the parties’ counsel presented oral argument but no evidence was introduced. Following that hearing, the trial court entered a judgment that stated: “[The former wife] is granted a judgment against [the former husband] in the total amount of Fifty Five Thousand Twenty and 45/100 Dollars ($55,020.45), which amount represents a total of the following: [the former wife’s] share of the [Gold Kist] Equity account, goodwill, conversion damages and interest.” The former wife then timely appealed.

Standard of Review '

The trial court did not make any specific findings of fact in its judgment. “[W]hen the trial court in a nonjury case enters a judgment without making specific findings of fact regarding a disputed issue, the appellate court
‘“will assume that the trial judge made those findings, necessary to support the judgment. Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs., Inc., 578 So.2d 1061 (Ala.1991). Under the ore tenus rule, the trial .court’s judgment and all- implicit findings necessary to support it carry a presumption of correctness and- will mot be reversed unless “found to be plainly and palpably wrong.” Fitzner, *562 578 So.2d at 1063. “The trial court’s judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989); see, also, Norman v. Schwartz, 594 So.2d 45 (Ala.1991).’
“Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992).”
Smith II, 141 So.3d at 1052-53. However, the ore tenus presumption of correctness
“““is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.’” Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). “Additionally, the oré tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.”' Waltman v. Rowell, 913 So.2d at 1086.’
“Retail Developers of Alabama, LLC v. East Gadsden Golf Club, 985 So.2d 924, 929 (Ala.2007).”
Smith II, 141 So.3d at 1052.

Analysis

The former wife argues that the trial court erred in awarding her only $55,020.45 because, she says,.that award includes only an erroneously calculated amount attributable to her equity-account claim and prejudgment interest on that award. Specifically, the former wife argues (1) that the trial court erroneously calculated that she was entitled to recover only $24,728.65 on her equity-account claim and $30,291.80 in prejudgment interest on that $24,728.65 and (2) that the trial court erroneously failed to award her any amount on either- her good-will claim or her conversion claim.
Although the trial court’s judgment does not explain the manner in which the trial court calculated the award of $55,020.45, it is apparent from the transcript of the hearing the trial court held after we remanded the cause in Smith II that the trial court began its calculation with the value of the equity account when the parties divorced in 1993, i.e., $197,829.21. The trial court then reduced that $197,829.21 value to $49,457.30, i.e., one-fourth of $197,829,11, to reflect the discounted value the equity account allegedly would have had if it had been liquidated when the parties divorced in 1993. The trial court then divided the $49,457.30 in half to arrive at a value of $24,728.65 for the former wife’s one-half share of the $49,457.30. To that $24,728.65, the trial court then added $30,291.80 in prejudgment interest to arrive at a total award of $55,020.45.
The trial court’s calculation is erroneous because it presupposes that the equity account was liquidated when the parties divorced and the proceeds were divided between them at that time. That presupposition is inconsistent with the undisputed evidence establishing that no liquidation of the equity account occurred when the parties divorced. Moreover, the trial court’s calculation is also erroneous because it is inconsistent with the holding in Smith I that, because the divorce judgment. did not dispose of the equity account, the former wife continued to own a share of the equity account after the divorce, see Smith I, 72 So.3d at 698 and 700, which is the law of the case, see Alabama Dep’t of Revenue v. National Peanut Festival Ass’n, Inc., 51 So.3d 353, 356 (Ala.Civ.App.2010) (“ ‘[W]hatever is once established between the same parties in the same case continues- to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated contin *563 ue to be the facts of the case.’ ” (quoting Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987))).
The former wife’s one-half ownership-interest in the equity account was still intact when Gold Kist replaced the equity account with the 36,471 shares, and, consequently, her one-half ownership interest in the equity account was replaced by a one-half ownership interest in the 36,471 shares. Because of restrictions Gold Kist had placed on the salé of the 36,471'shares, the former husband could not sell any- of the 36,471 shares until July 2005. The restrictions allowed him to sell 18,235 of the 36,471 shares in July 2005 but did not allow him to sell the remaining 18,236 shares until October 2005. The former husband sold 18,235 of the 36,471‘shares in July 2005 when Gold Kist shares were trading for $21 per share and received net proceeds of $382,602.92 for those 18,235 shares. In October 2005, when Gold Kist shares were trading for $18.75, he sold the remaining 18,236 shares and received net proceeds of $341,805.35 for those 18,236 shares. Thus, the 36,471 shares realized a net total of $724,408.27 when they were liquidated. Therefore, on her equity-account claim, the former wife is entitled to recover one-half of the $724,408.27, i.e., $362,204.13, plus prejudgment interest on one-half of that amount since the end of July 2005 and prejudgment interest on the other half since the end of October 2005.
The former wife’s conversion claim alleged, among other things, that the former husband had converted the equity account.
“‘[A] conversion is said to consist “ ‘either in the appropriation of the thing to the party’s own use and beneficial enjoyment, or its destruction, or in exercising of dominion over it, in exclusion or defiance of the plaintiff s right, or in withholding the possession from the plaintiff, under a claim of title .inconsistent with his own.’” Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala.1985), citing Geneva Gin &. Storage Co. v. Rawls, 240 Ala. 320, 322, 199 So. 734 (1940) (quoting Conner & Johnson v. Allen & Reynolds, 33 Ala. 515, 517 (1859)). But “[t]he bare possession of property without some wrongful act in the acquisition-of possession, or its detention, and without illegal assumption of ownership or illegal user or misuser, is not conversion.” Clardy, 477 So.2d at 352, citing Bolling v. Kirby, 90 Ala. 215, 7 So. 914, 24 Am. St. Rep. 789 (1890).’
“Martin v. Luckie & Forney, Inc., 549 So.2d 18, 19 (Ala.1989)....
““‘Four different actions may constitute conversion: a wrongful taking, a wrongful detention, an illegal assumption of ownership, or an illegal use or misuse. National Surety Co. [Corp.] v. Applied Systems, Inc., 418 So.2d 847 (Ala.1982).”
‘“Tyler v. Equitable Life Assurance Society of the United States, 512 So.2d 55, 57 (Ala.1987).’
“Jones v. DCH Health Care Auth., 621 So.2d 1322, 1323 (Ala.1993). ...See also SouthTrust Bank v. Donely, 925 So.2d 934, 939-40 (Ala.2005).
“‘Conversions may be divided into four classes, (1) by a wrongful taking, (2) by an Illegal assumption,, (3) by an illegal user or misuser, (4) by a wrong detention.' In the first three classes, there is no necessity for a demand and refusal. In the latter class, a demand and refusal is required as the detention of a chattel furnishes no evidence of á disposition to convért to the holder’s own use, or tb divest'the true owner of his property.’
“Scott Paper Co. v. Novay Cherry Barge Serv., Inc., 48 Ala.App. 368, 371, 265 *564 So.2d 150, 153 (Civ.App.1972). See also W. Page Keeton et al., Prosser-and Keeton on the Law of Torts § 15, at 99 (5th ed. 1984) (‘Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of [conversion].’ (footnote omitted)).”
White v. Drivas, 954 So.2d 1119, 1123 (Ala.Civ.App.2006) (emphasis omitted).
Because the former husband had rightfully come into possession of the equity account during the marriage, his retaining possession of it after the divorce did not constitute a conversion. See White. Likewise, because he had rightfully come into possession of the equity account during the marriage, his receiving possession of the 36,471 shares that replaced the equity account when Gold Kist became a corporation did not constitute a conversion. Id. However, his selling the former wife’s one-half share of the 36,471 shares for his own benefit constituted a “ ‘misuser’ ” of her share and, thus, constituted a conversion of her sháre. White, 954 So.2d at 1123 (quoting Scott Paper Co. v. Novay Cherry Barge Serv., Inc., 48 Ala. App. 368, 371, 265 So.2d 150, 153 (Civ.App.1972)).
Because the equity account and the 36,471 shares, which replaced the equity account, fluctuated in value, the following principles govern the determination of the damages the former wife is entitled to recover for the former husband’s, conversion of her share of the 36,471 , shares:
“The measure of compensatory damages for conversion, particularly with proper- • ty that fluctuates in value, is either its fair, market value on the date of conversion, or its value at any time subsequent to conversion and before trial, whichever is greater, withinterest from the date of the conversion; recovery of the property by the plaintiff does not bar a suit for conversion but merely reduces the plain- ’ tiffs damages by the value of the property at the time of its return.”
Brown v. Campbell, 536 So.2d 920, 922 (Ala.1988), The former husband sold 18,-235 of the 36,471 shares in July 2005 when Gold Kist shares were trading for $21 per share and received net proceeds of $382,602.92 for them. Because of restrictions placed on the sale of the 36,471 shares by Gold Kist, he had to wait until October 2005 to sell the remaining 18,236 shares. In October 2005, he sold the remaining 18,236 shares when Gold Kist shares were trading for $18.75 per share and received net proceeds ‘of $341,805.35 for those 18,236 shares. The former wife introduced evidence indicating that the highest price attained by Gold Kist stock during the five years before January 11, 2007, was $23.95 per share; however, the former wife’s evidence does not indicate whether that price was attained before or after the sale of the 36,471 shares. Therefore, based on the evidence in the record, the maximum value attained by the 36,471 shares between the date of the conversion and the trial was $21 per share. At $21 per share, the former wife’s one-half interest in the 36,471 shares had’ a value of $382,735.50.[1] ’.However, that amount must be reduced by the $362,204.13 she is entitled to recover on her equity-account claim. Therefore, on her claim alleging conversion of the equity account, the former wife is entitled to recover" $20,531.37 plus interest from the end of July 2005.
*565 We will now address the former wife’s^ good-will claim. In Smith II, we held that, because more than 30 days had elapsed since the entry of the divorce judgment, the trial court had jurisdiction .to award each party his or her ownership interest in the good will;- however, we further held that the trial court did not have jurisdiction to alter the ownership interest of either party. 141 So.3d at 1053. Moreover, we held that, by awarding the former husband all the value the good will may have had, the trial court had altered the parties’ ownership interests in, any good will the poultry farm may have had, which it did not have jurisdiction ⅜0 do. 141 So.3d at 1053-54. Although the former wife argued in Smith II that the trial court had.erred in awarding all the value the good will may have had to the former husband, she did not ask us to instruct the trial court, on remand, to reopen the evidence so that she could introduce evidence regarding the value of the good will. Consequently, we instructed the trial court, in pertinent part, to determine the value of the good will “based on the evidence already presented” and to enter a judgment awarding the former wife one-half of that value. 141 So.3d at 1056. The former wife did not apply for a rehearing in order to challenge the requirement that the determination of the value be “based on the evidence already presented.” , Id. The record indicates that, during the resumption of the bench trial after we remanded the cause in Smith I, the trial court sustained the former husband’s objection to the evidence the former wife sought to introduce in order to establish the value of the good will. Although the former wife’s counsel made a proffer regarding that evidence by stating on the record the substance of the testimony he expected to elicit from an expert witness regarding the value of the good will, the trial court did not allow that evidence to be introduced. Thus, the record contains no evidence- establishing the value of the good will — for all that appears in the record, the good will had no value. Therefore, the former, wife is not entitled to recover any amount on her good-will claim..=.
Accordingly, we. reverse the judgment of the trial court and remand the cause with instructions for the trial court to enter a judgment (i) finding in favor of the former wife on her equity-account claim and awarding her $362,204.13 plus prejudgment interest on one-half of that amount since the end of July -2005 and prejudgment interest.on .tbe other half since the end of October-2005, (2) finding in favor of the former wife on her claim alleging conversion of the equity account and awarding her $20,531.37 plus prejudgment interest from the end of July 2005, and (3) finding in favor of the former-wife on her good-will claim but awarding her nothing on that claim. ‘ -
The former wife argues that, because, the trial court, on remand, failed to enter judgments complying with our decisions in Smith I and Smith II, we should order the trial court, on remand, to reassign the cause to another judge. ' However, it appears that the trial court’s failure to enter judgments complying with those decisions resulted from a misunderstanding of the import of those- decisions rather than a-willful disregard of those - decisions. Therefore, we decline to order a reassignment of the cause on remand. Finally, the former wife’s request for the award of an attorney fee on appeal is denied.
REVERSED -AND REMANDED WITH INSTRUCTIONS.
THOMAS, J., concurs.
DONALDSON, J., concurs in the result, with writing, which THOMPSON, P.J., and MOORE, J., join.

. 36,451 shares divided by 2 equals 18,225.5 shares. 18,225.5 shares multiplied by $21 per share eqüáls $382,735.50;